Would you call the first case, the only case. Alright, with the lawyers who are going to argue the case, you don't have to get up yet, just tell us your names. Okay. Okay. And you each have 20 minutes. Ms. Pryor, would you like to reserve some part of that for rebuttal? Okay. That should be good. And I'll just remind you both to keep your voices up nice and loud because this microphone does record but it does not amplify. Alright, Ms. Pryor, whenever you're ready, we are ready. May it please the court, I'm Joanna Pryor and I represent the plaintiff appellant Kathleen Brown in this matter. Ms. Brown sustained serious injuries on July 2, 2015 when she was run over by a city police car in an alley not far from her home. There's no dispute at all that the officers were engaging in routine patrol activities just prior to this incident. They were circulating around the nearby side streets and alleyways looking for potential drug activity. Their headlights were off so as not to be easily seen. But isn't that enforcing the laws? It is not under the law, no. That is, that is a, it's very clear under the case law that routine activities such as... Oh, I get that, but is driving through an alley with your lights out looking for drug transactions routine activity? Not under the laws that I've cited in my brief or even anything cited by the appellee. What you're looking at for executing and enforcing the law is a course of conduct and you have to look at the totality of the conduct of the officers. Some of the, much like the present case, some of the activities that are not considered to be executing and enforcing include transporting prisoners and routine patrols of this nature. Well, let's go to the basis upon which the city does argue they were executing and enforcing, which is that they were responding to a call. Right. And you seem to have moved away from the arguments that you made in the trial court, which is that we need to know what kind of call that was in order to reach the conclusion that it was executing and enforcing. Have you abandoned that or do you still adhere to that position? We still adhere to that position, Judge McBeth. I think the reason why I focused more upon the other aspects of it, stayed away from that, is because the trial judge specifically told us that that didn't matter to him. And so in revealing his opinion before this court, I wanted to focus on what the trial judge was focused on. But we never abandoned that at all. In fact, I think he was wrong in saying that we weren't allowed to point out the fact that there was no evidence that it was a serious or emergent call. In this case, it says responding, for example, to a call of a missing person is not executing and enforcing. Correct. And if this was my child won't come inside or my daughter is, you know, yelling, that would not necessarily be executing and enforcing, would it? It wouldn't at all. And in fact, I think that we were deprived of the opportunity to point out to the jury that there was no evidence on the affirmative defense. This is an affirmative defense of immunity. And so the city has the burden to reveal what the nature of that call is. If they're responding to and to prove that it was urgent enough, that it would at least add to the facts that support executing and enforcing. Okay. So the court somewhat limited both sides from putting in facts on that issue. To your knowledge, what is in the record, if anything, as to the nature of that call? So the only thing in the record is that the call comes in through the Office of Emergency Management. So it does technically come in through the 911 line. But there is a complete distinction between, and I want to cite some testimony here, there's a complete distinction between actual 911 emergency calls and then calls for service like this one. And the officers themselves made it abundantly clear that this was not an emergency in their own testimony. That was in the first trial. They did it in both trials, yes. And I kind of have along the same lines. My question is a little bit different because I did quite a bit of research on this. And I struggled finding cases relevant within the last 20 years. So most of the cases I found are really old. And there's a second district case. And I apologize if you're not familiar with it, it's okay. It's the Buicks case versus the County Blake. And in that case, the court was clear that in that case the officer was responding to shots fired. And the court went on to say that the fact that the officer was not specifically dispatched to the scene, did not have his emergency lights on, did not have his siren activated, that none of that mattered, that the officer was still immune. Right. And is that the Buicks case, B-R-E-U? Yes. Actually, the trial court relied on that case and the defendant does heavily as well. And in my reply brief I cited Carter versus DuPage County Sheriff, which distinguishes Buicks in the proper way as this case is distinguished from Buicks. First of all, you're talking about shots fired. Shots fired, you have a weapon involved. And that certainly is an involvement of a crime. Not a potential crime, not, you know, as Hudson says, not a speculative possibility that you might encounter some sort of criminal activity, but an actual crime in progress. And then the same distinction exists for the Morris case. There's a gun involved. You know, here we've got no idea what the domestic disturbance is. It wasn't necessarily domestic violence. It was just a domestic disturbance. Correct. Which, as the other justices have pointed out, it could have been simply that my son wants to leave the house. Exactly. I don't want him to leave. He's 16 years old. It could even be my cat's stuck in a tree. I mean, it could be any range of things. But it's certainly not an emergency. And the officers are not behaving as if it's an emergency. I mean, look at what they do after they respond to the dispatch call. They don't change their behavior at all. They follow the same route they were going to take in their routine patrol. They are going two to five miles per hour by their own testimony. There was a question about the turn that they made, whether or not the turn was actually headed towards the call without having to go down a one-way street. I mean, if it's an emergency, they should be going down a one-way street. Well, as the trial judge noted, if they considered it an emergency, they would have taken a different route. There was a shorter route to that location. A one-way street. Exactly. Exactly. So they didn't do that. And I know the testimony is a little bit difficult to nail down on the taking the same route in this particular trial because it gets used that you don't have the benefit of seeing with the testimony. But the trial judge twice said in this trial, you know, they're clearly going the same way. That's not the issue. And it seems to me that the accident, if you will, happened almost immediately after they responded to the call, probably within seconds. It was within a matter of one minute. I mean, they get the call. They responded to the call right away. So they were going to respond to the call within one minute, according to the testimony of one operator. That's correct. So therefore, the accident had to be within seconds. It was, yes. It was almost immediately. And that was part of the justification for why the trial judge denied all the directed verdict motions and the motions eliminated. But if you look at the way the officers are behaving, and their behavior and their subject belief does matter, under Simpson and Payne and some other cases I've cited, they are not doing anything different. They don't even put their headlights back on, which Officer Potter admits is a violation of procedure if you're going to even a domestic disturbance call. So they don't put their headlights on. There's no emergency lights. They're not speeding up. They're not doing anything that even suggests remotely that they're responding to something that's an emergency. And they actually distinguish in their testimony a call for service from an actual emergency. Officer Potter says twice in his testimony, literally, when he's asked by his, well, the city's attorneys, do you have to, are you going straight to the call? Are you obligated to go straight to the call? And he says twice, yes, unless I see an actual emergency on the way. So, I mean, he's clearly distinguishing an actual emergency from where he's headed himself. And that wasn't even us examining it, but that's his belief. I think what significance, if any, this is on a different topic. But what significance, if any, do you see to the jury asking the question whether executing and enforcing begins when an officer acknowledges a dispatch call? I think that shows that they're confused. I mean, I think it illustrates the extremely confusing nature of this special interrogatory. You've got en route injected into a case where the statute at issue says executing and enforcing. It says nothing about en route. No other jury instructions whatsoever mention en route. What does it mean? And because of the special interrogatory statute as it stands now, we can't even explain to the jury what it does to the verdict when they answer that in the affirmative. And that's a serious problem. I think they were confused. I think the question illustrates their confusion. Also, probably they were trying to get it right. I mean, they were struggling. Exactly. They were struggling. And I think particularly I did want to mention the pending legislation. Yes, we did. I'm sure you're aware of that. And, you know, that's anticipated to be signed into law and go into effect in January. And, of course, that's not binding on this case. However, I would suggest that the major overhaul that the legislature is engaging in and the acknowledgment of the myriad of difficulties with this statute would at least suggest to the court that they take a conservative approach to affirming the discarding of a jury verdict in this case. Certainly it's very telling what they've done with the statute. And many of the problems that create the confusion that we're talking about here today will be rectified by the amendment. Would you address the question of whether this special interrogatory was irreconcilable with the general verdict? Yes, and I think it's interesting that the city doesn't really talk about that very much in their brief. They just skip to whether it was in the proper form or not. But the concept of en route and executing and enforcing are completely distinct. You can be en route to a call and not executing and enforcing the law, and that's exactly what the Carter v. DuPage County Sheriff's case held very clearly. You've got a sergeant who is obviously on his way to a call of a death or injury. They're not really sure what the nature of the call is. And in this case, we have even less information. He's got his emergency lights on and his siren. We don't even have any of that here. And yet, yet the court concluded that even though he was engaging in those behaviors, he was not necessarily executing and enforcing the law. So they are distinct. And Officer Potter's testimony indicates that as well. Although this was during impeachment, but he did say during his discovery deposition that he wasn't enforcing any law when he started to move again after the call. So he acknowledged that it was distinct. The trial court acknowledged that it was distinct also when they were discussing, when he was discussing the renewed directed verdict at the close of evidence. And he said, I quote, speaking of Officer Potter's conduct as a whole, quote, it doesn't appear to be indicative of somebody who is responding to an emergency call or attempting to enforce the law. If the policeman is enforcing and executing the law and he's en route to do that, then he gets the higher standard. So they're two separate things. You can be en route without executing and enforcing a law. Am I right that the jury was not instructed at all on what executing and enforcing meant, only that it provided immunity? That is correct. That is correct. And I think that adds to the confusion. In the first trial, we had, if there's going to be a special interrogatory at all, the proper one, which was do you find that Officer Potter was executing and enforcing the law. The city now claims that was confusing, even though they submitted it in both trials. But almost as an afterthought, they offered this en route special interrogatory, to which we strongly objected. And our objection, that was given instead of the executing and enforcing, which mirrors the statute and properly states the law. So in answer to your question, Judge Griffin, because you can be en route without executing and enforcing, then it is not irreconcilable. So the question really is, based upon the answer to the special interrogatory, based upon the answer to the special interrogatory, the jury's verdict could never stand. And so the question is whether or not, and I think you're just adding a twist to that, you believe that they can both happen at the same time, that they can. It is, yes, the answer to whether the officer was en route is not inconsistent with the general verdict, number one. And number two, it actually doesn't relate to an ultimate issue of fact upon which the rights of the parties are dependent at all. And that's another thing it has to do. Whether or not the officer is en route isn't dispositive of whether or not they're entitled to the immunity, for the reasons I've stated. All of the case law refers to a course of conduct. And what the en route portion is, is just one evidentiary fact. And special interrogatories that relate only to one evidentiary fact are always improper. And that's one of the reasons it was in this case. I mean, if it's not absolutely irreconcilable, isn't that the end of the case? It is, Your Honor, yes. And I think it's abundantly clear that it is not absolutely irreconcilable in this particular case, and does not go to any ultimate issue of fact. I think that the trial court got it right, essentially, when he was ruling on the directed verdicts and the motions of limine, but by the time we got to the end of trial, what the submission of, and the answer to the special interrogatory, I think that, unfortunately, he conflated, as the defendants did, the concepts of en route and exercising and enforcing the law. And they are not synonymous. They are not synonymous at all. If you want to reserve your rebuttal time, unless there's more questions, I think you're out of time.  Thank you, Your Honor. I'll reserve the rest. Thank you. May I please have the quote? Officer David Potter was dispatched to a 911 call and was, as the jury found, en route to that call when his vehicle struck the plaintiff. Those facts established that at the time of the accident, Officer Potter was engaged in a course of conduct to execute and enforce the law. What law was he executing and enforcing? We don't need to know what law an officer would ultimately be called upon to enforce in order to determine the question of immunity. What if he wasn't enforcing the law? Don't we need to know he was enforcing the law? Isn't that the issue? Respectfully, just to clarify, perhaps it's better to help understand this. We never know when an officer responds to a 911 call. We don't know what law the officer would ultimately be called upon to execute and enforce, but we do know that the officer is being called upon to provide a law enforcement response. The case is clear that what that specific law may end up being is not relevant to the question of immunity. Everything an officer does is a law enforcement response. I mean, reaching patrol is a law enforcement response. I mean, that doesn't seem to be quite enough. Routine duties, transporting prisoners, things that have been consistently said are not executing and enforcing are law enforcement duties. They're a law enforcement response. What makes this executing and enforcing? I think that's the question. Not every call, not every situation to which an officer is going to provide assistance is executing and enforcing the law. Correct, correct. Why do you disagree with him? I think now you're saying you agree. Not every duty of a law enforcement officer is going to be executing and enforcing the law. And, for example, in several of the cases upon which plaintiffs were led, it was not clear that an officer had been dispatched to an event that required a law enforcement response, or at minimum the facts were disputed as to whether such a response was required. For example, in the Simpson case about the missing persons report, the court found that the investigation did not indicate an inclined need for a law enforcement response and concluded that this was part of the officer's routine patrol duties. Right, but that was a missing person. So that could be a kidnapping, that could be a death, or it could be somebody who was lost. Domestic disturbance could also be something that there's no law to enforce. Like Justice said earlier that maybe the sun won't come into the house, but what law is being enforced there? A domestic incident could be a range of things. But under Illinois law, police are required to dispatch to a domestic incident. They are required to provide, they need to go to such an incident under the assumption that they will be required to provide law enforcement services. A domestic incident could be a range of things. It could be something very serious. Do you realize though that, and I don't mean to ask the question, I'll just tell you, that you can't get a police officer to come onto any scene anywhere for any reason without a 911 call. There's no way to call a non, there used to be, but not anymore. You can't call a non-emergency number and say I need a police officer. It's not an emergency, I just need a police officer. You can't do that anymore. The only way to get a police officer on the scene today is to make a 911 call and to make that call an emergency. So therefore, all the calls to 911 cannot be considered enforcing the law. It's just not the case. Right. And we do not argue that any 911 call would require an immediate dispatch. We do not require that the officer would be mandated to immediately respond and provide law enforcement services no matter what the nature of the call. Our unit is very specific to the facts here. Here we have a call which was a high-priority call to which the officer was required to respond, and the court acknowledged that. The call is required to respond to the 911 calls. Not all of the 911 calls involve enforcing the law. Respectfully not. Some can be responded to without an immediate response by a police officer. There are other means of responding to 911 calls. This, however, was a priority 1A call that required an immediate response. And when that call came in, it was immediately dispatched and the officers acknowledged the call and then, as the jury found, proceeded to respond to the call. The court stated that this is a call that the police are required to respond to. It's given a high priority with the police department. And the court concluded we shouldn't get into the details because in ruling on the motions in 1A, we recognize that it wasn't appropriate to have a mini-trial before the jury about whether or not this call was sufficiently important to be an emergency or require an urgent response or not. It was sufficient emergency. Emergency and urgent response aren't the issue. No. It's the law that's being enforced. And I still don't see what law is being enforced here. Well, there are a lot of possibilities. Possibilities don't go to a, what's the language about it has to be direct? Absolutely irreconcilable. Yeah. Thank you. With special interactions. Yeah. The court does not need to reconstruct what might have happened had these officers ultimately arrived at the location of this call. An officer is immune when dispatched to a call that requires a law enforcement response, and that call could turn out to be a hoax. For example, we could have an active shooter who wrote a call but find out later that there actually was no such incident. We don't require the officer to be clairvoyant. In Brooks, which the court mentioned a moment ago, the appellate court explained that immunity cannot depend upon circumstances which have developed after the fact. And in that case, the court concluded that the call, the situation required investigation, whether or not anyone was actually apprehended or ultimately found to have violated any law or ordinance. Likewise, this was a call to which the officers were mandated to respond. They had to investigate what had happened, and they were immune regardless of whether anyone was ultimately arrested, whether anyone had ultimately violated any law. But what is in the record about, and I agree with you, that what the call turns out to be can't be what's determinative. It's whether the officers know at the time they're dispatched. And what's in the record about what these officers knew at the time they were dispatched? They knew that they were required to immediately dispatch this call. And the record supports that. The officers knew. And this is, what are we looking at, the officer's testimony? You don't have to read it to me, but just the officer's testimony, is that what you're relying on? Yes, in this case, yes. And now there was, as you've already heard, this motion in Limine by which the parties were instructed not to apply the motion in Limine to the city. And so the city said, we don't want to get into the nature of the call? The city was concerned that because the case law says that whether the call is an emergency is not relevant to the immunity analysis, that it was not appropriate for plaintiffs to try to minimize what this call was. And therefore, if I have this motion in Limine, the court granted it and the court instructed the parties that the city was not to introduce evidence that a domestic disturbance call is a priority 1A call to which officers have to respond immediately. But it promised not to minimize what the call would have been because these arguments weren't relevant to the issues in the case. And so the motion in Limine was given that it was undisputed, the officers were dispatched and had to respond immediately. And the court has not challenged the ruling on that motion in Limine. I'm sorry. No, but the burden was on you, and it was your motion in Limine, and then you limited any evidence as to what this call was, but you relied on this call as the basis for immunity. I'm a little confused. In any event, Your Honor. Not in any event. What do we know about this call, and why do we know that if they were responding to this call, which I think is a whole other question, that it was executed and enforced? You're saying it's because they said they had to respond to it? That's what you relied on? That all you needed to show was that they had to respond to this call? No, that they had to respond and go to provide law enforcement services. Not to, for example, provide assistance to a sick person. Not to, in the case of the Carter case, which was discussed, not to investigate what may have been a natural death that didn't involve any criminal activity. Here we have the potential. They must operate under the assumption that there is some legal violation occurring. They need to investigate it. They need to determine is somebody at risk here. They need to take that seriously, and state law says they have to take it seriously, and that is why city truce is a priority when it calls. But the interrogatory was en route to the domestic disturbance call. Wouldn't the other one acting in the execution and enforcement of any law, wouldn't that be more on point? Because we don't know if en route, first of all, but en route to the domestic disturbance call, again, what laws are being enforced? You say you don't need it, but that's the crux of the case. In this case, being en route is dispositive. It is an ultimate issue of fact in this case. We're not arguing that being en route to anything is going to be dispositive in every case. Indeed, it's not. But in this case we know what they were en route to then because of what you just said, that it isn't dispositive in every case. We know enough. Most of the facts in this case that are relevant to immunity were not disputed. It was undisputed that Officer Potter was dispatched to the call. He acknowledged the dispatch. He began driving toward the call, and then he struck the plaintiff. But the circuit court identified a question of fact for the jury. The court denied, as you know, the city's motion for a directed verdict and said there is a question of fact that's disputed here. I don't know if they actually started responding, just started moving toward the call or if they're still doing their routine patrol. Are they still looking around this aisle for drug activity, or are they en route to the call now? What about the possibility that they were doing both? The idea that the multitasking would be a carve-out to the immunity does not find any support in the law. I find absolutely no case that suggests that once you're en route to provide those law enforcement, that law enforcement response, the fact that you might be looking around you at the same time, that does not defeat immunity. What's sufficient is the course of conduct has been initiated. But what changed in their course of conduct? They didn't put the headlights on. They didn't put the mires lights on. They didn't put the siren on. Their course of conduct was the same one they had been doing. And that's why the case went to the jury on the negligence issue, because the court felt that it could not decide this as a matter of law, because whether or not they had actually responded to the call at that point versus being on routine patrol, he found was a gray area because precisely of what you've identified. Is responding the same as en route? En route just means on the way. Yes. Responding is something different than en route. No. Once you're en route, it's part of the course of conduct. Maybe yes to you, but maybe no to the jury. That's all I'm saying. Why is it? Let's just get to the real question. Why is it absolutely irreconcilable? Well, here's what we know. We have the dispatch, the acknowledgement of the dispatch. We have a domestic disturbance call that requires management of police response, certainly potential for criminal activity, certainly potential need for law enforcement there. And then we have they were asked, okay, has the course of conduct initiated? Are they now providing that necessary response? And that's the question the jury answered. Yes, they're going there. That's the fact of it. That's a different question. Are they providing the necessary response to it? It's the same thing there. They're en route to the call. And under cases such as Fitzpatrick, once you're dispatched to the call and you are proceeding to the call, that's part of the course of conduct that's executing and enforcing the law. And I can't ---- I mean, what Aiken says, which is after Fitzpatrick, is that the negligent conduct has to be shaped or affected by the nature of the duties in enforcing or executing. So how is the negligent conduct, which what was the negligent conduct? We don't know what the jury found was negligent conduct. I think the fact that they hit her. Okay. How is that shaped or affected by the nature of the duties of executing or enforcing? Respectfully, necessarily. The fact that they are not executing enforcing law at the moment they hit her is not. I get the course of conduct. But how is the negligent conduct shaped or affected by the course of conduct of responding to this call? Well, perhaps this is probably not a direct answer, but the justification for immunity is that the police officer should not be worried about potentially devastating liability while they're executing and enforcing the law. That could potentially hamper their performance. And that extends to the pathway toward that call location. So just in terms of understanding why they would be immunized for all of this course of conduct, we want them to proceed to that call with the expectation that they are going to be providing serious law enforcement response to this domestic incident. I would also note that in Starrick, this court, Starrick v. Village of Orland Park, this court stated the officer's course of conduct from the time he initially responded to a dispatch all the way up to the time when the accident occurred was reasonably related to the enforcement or execution of the law. So it's very clear under the binding precedent, both in Fitzpatrick and then this court's decisions in cases like Starrick, that this path to a call is part of the response. And that really, in this case, not another case, but in this case, this is all, this is the last piece in the puzzle to determining whether immunity applied. The circuit court identified this narrow question of fact, given how quickly everything happened, as to whether the officer was responding to the call, i.e., was en route to the call when the accident occurred, or was still engaged in routine patrol. And therefore, the court let the case go to the jury to determine that fact, which was an ultimate issue of fact on which liability turned. Therefore, the interrogatory was in proper form and was dispositive. Now, within one minute of contact with Ms. Brown, the officers notified the dispatcher of the preemption. Yes. So within one minute. And the officers actually made contact with Ms. Brown, not even knowing what they had made contact with. Correct. Until they took time to stop the vehicle, get out of the vehicle, and that's when they observed that they had, that Ms. Brown was still underneath the vehicle. Correct. Then one of the officers apparently returned to the squad car to notify dispatch that there was a preemption event. Now, all of this occurred within one minute. It seems as though the jury could have found, could have found, I don't know what the jury did, none of us did, but could have found that all of this happened at the same time. At the same time they received the call that they needed to respond to the domestic issue. They also hit Ms. Brown. Therefore, when they hit Ms. Brown, they did not have been in route to anything yet. The jury could have found that, but at the same time found that they were at the same time hitting Ms. Brown and was in route. Therefore, coming back to what we've been discussing the whole time, the question is whether or not it's the special, the verdict is absolutely irreconcilable with the special interrogatory. And it may not be based upon what the jury found. We really don't know. Okay. And it seems as though maybe the trial judge made that decision. And I'm not sure whether or not the trial judge is right or not. I guess it's going to require some additional research. Your Honor, just as to that timeline, that would not be supported by the record. The timeline, the one minute is not supported. The minute is. Certainly is. And again, the record is clear though, the record is clear that they didn't know what they hit. Do you agree? Yes. And they also got out of, stopped the squat car, got out of the squat car, and that's when they noticed Ms. Brown underneath the squat car. And then they reported to dispatch that they had a preemption event. All of that occurred within one minute. Yes. Within one minute of the original dispatch. Right. So it seems as though it's possible that the contact with Ms. Brown was made at the same time that they got the call regarding the domestic issue. I need to disagree on that point because the record does establish that the call where the dispatch was received and acknowledged. There's actually, there's a video that shows this as well where you can see the sequence of events. Right, of course. But I do not think that, as I understand it, the suggestion is that perhaps the dispatch to the 911 call could have come after the accident or at the same time as the accident. That would not be supported by the facts. They received and acknowledged the dispatch, and then as the video shows, they began moving, turns the corner, and then the accident occurs. So the timing of that is, I don't think, subject to a contrary conclusion by the jury. Can you explain to me, we all agree the standard is it has to be clearly and absolutely irreconcilable with the general verdict. The trial court, the last thing prior to the conclusion, he said, Thus, the jury's answer to special interrogatory number three, that Officer Potter was en route to an assigned domestic disturbance call, does leave open the question of whether Officer Potter was executing and enforcing the law. Then it goes on to say that the jury's affirmative response compels the application of the execution and enforcement of law immunity, which is irreconcilable with the general verdict. But I'm just curious, if the question is still open, then how is this absolutely irreconcilable? The question is, once the jury has found this fact, they are en route to the call to which they were dispatched to which they must respond. The question that the court says is open is a legal question, not a factual question. The question that is open is one that the court can then decide. Now that I have this set of facts, and those facts are, I've got the dispatch, I've got the acknowledgement of the dispatch, I have this domestic disturbance call to which there's a mandated response under state law, and I've got the fact that they are en route to the call. I have this set of facts as found both by the jury and undisputed facts in the case. Now, the open question is a legal question. Does that set of facts – I'll let you finish, but we're aware that it's a legal question, which means there's a de novo review, and there's very little deference given to the trial court's ruling. Correct. It is de novo. But the point being that because this is now a legal question, whether this set of facts establishes immunity, that is one that's appropriate for the court to decide. And, in fact, although we recognize that there are cases in which this executing and enforcing interrogatory is given, it's not necessarily improper. We do believe that it is much preferable to use the interrogatory that was given here because it was a concrete question of fact on which liability turned. It was something that was readily understandable by the jury. It was a simple question of fact. And, frankly, it didn't need definition. It was not confusing. Just are they en route? That's not something that you would need a definition to understand. In contrast, had the jury been given this execution and enforcement interrogatory, that begs the question, as I think you've noted, what is execution and enforcement under law? And that would have required the jury to answer this legal question, to apply a legal standard to the facts. The parties would have been arguing to the jury basically the same argument we're having here about whether those facts establish as a matter of law execution and enforcement. But you proposed that. You proposed the one that you say isn't good. Yes. And then I realized, the first, the alternative interrogatory was used in the first trial. And after that, in William's directive verdict, it became very clear that the court had identified a moral issue of fact upon which liability for negligence would turn. And it was for that reason that the city realized that the far better interrogatory for this case was that narrow question of fact because that was not going to be something that was going to involve the parties in this legal argumentation on closing argument, what is execution and enforcement, really having the jury weigh in on what's essentially a legal construct rather than a factual question which is appropriate for a jury to decide. And so even though, for example, in Lacey, this interrogatory was given and then the appellate court held it was not air to give it, the appellate court has never said that that's the only one that's proper or appropriate. They gave the wrong one? Yes. Okay. Right. And so plaintiff tries to construe that case as saying that that means that that was the one that has to be given. Absolutely not. The court did not consider whether the en route interrogatory would be proper. And, indeed, the Lacey opinion does also support the idea that when you have an officer responding to a call for assistance, that's ample support to conclude that the officer is executing and enforcing the law, as was the case here. Although the officer did testify otherwise. The officer testified that at the time of the accident, he was not executing and enforcing the law. And, of course, we know that's irrelevant to the inquiry, because all the officer needs to be doing is engaging in a course of conduct to carry out any law. And so the drive to the location is part of that. So it certainly was not. And the jury believed he was continuing, they were continuing in their previous course of conduct, which is to find the drug dealer. The jury could have concluded that. That could be why the jury ruled the way that they did. Well, the jury, on argument, on closing argument, the parties both argued to the jury, explained to the jury that if they were en route to this call, they would be executing and enforcing the law. And so it was not a confusing issue to the jury about whether or not they would have been immune or not. Obviously, that's a legal issue. So the jury answered the special limits interrogatory, which you believe is irreconcilable with the verdict. You don't believe the jury was confused? No, I don't. There's nothing that indicates confusion here. On one hand, the jury did think that the officers were negligent and that Ms. Brown was 50 percent negligent. So they did make that conclusion on their verdict one. And then there also may be factual finding that the officers were en route to the domestic disturbance call. The jury was instructed that if they were executing and enforcing, they were immune. The jury was instructed. That was in the jury instructions. So the jury understood that finding a negligent was inconsistent with them executing and enforcing. From the instructions, the jury understood that. So the jury was clearly confused. I don't think that that's – there's nothing in the record that suggests the jury was confused. But I also don't think that it's necessary. Or that they didn't follow the instructions well. But the special interrogatory was a check on the jury, of course. So it's not necessary that the jury understand – I found no case that says the jury would have to understand the import of the factual finding on the special interrogatory. In fact, that's the purpose of the special interrogatory. So there's nothing that would have required the jury to understand, oh, if we find that they were en route, then they would be immune. In fact, the purpose of the interrogatory is to check the general verdict. And so that would not be required. Your time is up. Are there any further questions? Thank you. Thank you. Please. Thank you. Just very briefly, I want to start by correcting a statement that was made at the end of counsel's argument. At no point in time during closing argument would plaintiff or did plaintiff equate being en route with – Excuse me. That's not my recollection. The argument was they never gave up their initial idea of trying to find these drug dealers. And the special interrogatory statute being what it is today and what it was at the time, we weren't even free to explain to them to correct any confusion they may have about what the difference was between executing and enforcing and being en route and what the impact that might have on their verdict. So very frustrating and very prejudicial to Ms. Brown for sure. Before you address, I wanted to ask you one question that counsel for the city addressed. Are you aware of any cases similar to this one where arguably there were two courses of conduct going on simultaneously or so close to each other that they may have been multitasking? Are you aware of any cases? I'm not, Your Honor. I looked very hard, but I did not find anything where everything just happened almost simultaneously as the trial judge admitted that it did. And I think that just adds to the confusion. And I think when counsel repeatedly said that being en route was a, and I think I'm quoting her correctly, narrow question of fact, that underscores the fact that it is a mere evidentiary fact that it's inappropriate for a special interrogatory and that it's just a small piece of the larger question of the course of conduct that may or may not have indicated that they were executing and enforcing the law. Because you believe it doesn't go to the ultimate issue. Exactly. And therefore, it's not absolutely reconcilable with the general verdict. It's their affirmative defense. They can't rely on this call and yet make statements like, well, we'll never know what it was. And there are a lot of possibilities. The multitasking that we're talking about here, doing both at the same time, I think, Judge Walker, you were addressing that. What if the jury believes that the officers were doing both, responding to the call and basically multitasking at the time that this occurred. And that's not carving out an exception to immunity. That is complying with the special interrogatory statute. It's an entirely different thing. It's their affirmative defense of immunity. They have to provide the facts that support it. And they have to submit a special interrogatory that complies with the special interrogatory statute, which they did not do. I will just note that I think the city understands that the argument is a bit weak because at page 16 of their response brief, they distinguished my case law, Payne and Simpson, by saying, well, those cases didn't involve a 911 call to a crime in progress. That's not our facts. There was no 911 call to a crime in progress. It was a call for service. The officers testified that's what it was. The dispatcher testified that's what it was. And just to reiterate, I spoke about the Officer Oliver's testimony concerning whether or not it was really an emergency. And to the extent that that matters, he says, and I quote, if you're given a dispatch call for a domestic disturbance, unless you have somebody in custody or detained before you're on another call, that's your job. Anything that you're doing, you need to stop. And unless it's an emergency, you need to go to the call for service. He later says, if I'm driving and I see on view shooting or an on view robbery or something, like an actual emergency, then obviously I have to intervene with that before going to the call. So we are not seeing this call as an emergency by any way, shape or form. And their behavior is consistent with that. It was a short space of time, but they did have enough time to do something before they hit her, I think. You know, at least behave in some manner consistent with responding to the call. And they didn't do that. In the event that's kind of getting off track, because the point is the concept of being en route is not synonymous with executing and enforcing the law. Therefore, the special interrogatory was not absolutely irreconcilable with the general verdict. And we respectfully request that you reverse the trial court's granting of JNRB and reinstate the verdict court. Thank you both. As you can tell, we think this is a very interesting question and we'll take it under advisement.